UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:17-CR-00561-CDP-SPM |
| | ) |
| KIHAUNDRA WARREN (4), | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION AND ORDER
OF UNITED STATES MAGISTRATE JUDGE**

In accordance with the Memorandum filed herein,

**IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress Identification (Doc. 224) be **DENIED.**

**IT IS FURTHER RECOMMENDED** that Defendant's Motion to Suppress Surveillance (Doc. 225) and Motion to Suppress Evidence (Doc. 226) be **DENIED as moot**.

The parties are advised that they have **fourteen (14)** days in which to file written objections to this report and recommendation pursuant to 28 U.S.C. §636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

**IT IS HEREBY ORDERED** that Defendant's Motion for Early Disclosure of Jencks Act Material (Doc. 227) is **DENIED**.

Trial in this case has been set before the **Honorable Catherine D. Perry** on **October 15, 2018, at 8:30 a.m.**

SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 30th day of August, 2018.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:17-CR-00561-CDP-SPM |
| ) | |
| KIHAUNDRA WARREN (4), ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This matter was referred to the undersigned United States Magistrate Judge for all pretrial matters pursuant to 28 U.S.C.§636(b).

### FACTUAL AND PROCEDURAL BACKGROUND

On December 14, 2017, a federal grand jury returned a superseding indictment charging Defendant Kihaundra Warren with one count of possession with intent to distribute crack cocaine in violation of 21 U.S.C. §841(a)(1). The superseding indictment alleged that, on or about December 5, 2017, Warren and co-defendant Tony Gleghorn knowingly and intentionally distributed cocaine base. On December 20, 2017, a federal grand jury returned a second superseding indictment which added defendants but otherwise did not alter the charges leveled against Warren. Warren was arraigned on December 28, 2017. Through counsel, Warren requested, and was granted, time to file pretrial motions. On May 10, 2018, and consistent with this Court's pretrial orders, Warren timely filed a motion to suppress identification (Doc. 224); motion to suppress surveillance (Doc. 225); motion to suppress evidence (Doc. 226); and motion for disclosure of Jencks Act materials (Doc. 227). The United States opposed each of Warren's pretrial motions arguing, among other things, that Warren's motions lacked any factual or legal basis. (Docs. 231, 232, 233 & 235).

1

## I.    MOTIONS TO SUPPRESS SURVEILLANCE AND PHYSICAL EVIDENCE (DOCS. 225 & 226)

On May 24, 2018, the undersigned held a Pretrial Motion Status Hearing on Warren's pretrial motions. At the hearing, it became evident that there was no factual or legal basis for Warren's motions to suppress surveillance evidence (Doc. 225) and physical evidence (Doc. 226). As such, with the parties' agreement, the undersigned did not hold an evidentiary hearing on those motions and will not address them as part of this Report and Recommendation other than to recommend that they be denied, as moot, for the reasons stated on the record at the time of the Pretrial Motion Status Hearing, and set out in this Court's order dated May 24, 2018. *See* Doc. 239.

## II.    MOTION FOR EARLY DISCLOSURE OF JENCKS ACT MATERIAL (DOC. 227)

At the time of the Pretrial Motion Status Hearing on May 24, 2018, the parties agreed that no hearing was necessary for Warren's motion for disclosure of Jencks Act material. The parties agreed that the motion could be ruled based on the parties' written submissions.

Although Warren's motion is entitled "Motion for Early Disclosure of Jencks Act Material," a close reading of the motion reveals that, by Warren's own admission, the disclosures Warren seeks are actually ***not*** covered by the Jencks Act. Instead, Warren asks the Court to order disclosure of:

> any communication from any government witnesses to a government agent, whether a state or Federal investigatory agent or attorney, ***which communication is not considered by the government to fall within the ambit of "Jencks material" pursuant to 18 U.S.C. §3500***, including, but not limited to, the government's and defendant's version of the offense portion of any witness pre-sentence report, the witness' responses on a polygraph examination, communications made by electronic recording, and other types of mechanical or electrical means. The accused does not limit his request to, but specifically requests, communications between informants and/or "cooperating individuals" to any such agent or attorney.

> . . . [and] disclosure availability of rough notes, memoranda and/or reports of interviews by any government agent, whether Federal, state, or local with any witness, including, but not limited to, informants, or "cooperating individuals," for the purpose of permitting a knowledgeable proffer at the appropriate time and/or for the court to examine such materials.

*See* Doc. 227, p. 2 (emphasis added).

Warren is correct. The Jencks Act does not encompass the broad range of communications, reports, and other information she seeks. It authorizes disclosure of a witness' "statement" which it defines as "a written statement made by said witness and signed or otherwise adopted or approved by him;" a recording or transcription of an oral statement; or a statement "however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury." 18 U.S.C. § 3500(e)(1)-(3). And, the United States has already agreed to produce materials that fall within the ambit of the Jencks Act in advance of trial. *See* Doc. 231. In sum, Warren's motion for early disclosure of Jencks Act material fails because the United States has already agreed to produce Jencks Act material in advance of trial and because, by Warren's own admission, the disclosures Warren seeks fall outside the scope of the Jencks Act.

Warren has failed to identify any other legal authority that supports her requested disclosures, and the undersigned has been unable to find any. Indeed, Fed. R. Crim. P. 16(a), which generally governs the United States' disclosure obligations, appears to specifically exclude the type of information Warren is seeking. In its entirety, Rule 16(a)(2) states:

> Except as permitted by Rule 16(a)(1)(A)-(D), (F), and (G), this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case. Nor does this rule authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500.

3

The disclosures permitted under Rule 16(a)(1)(A)-(D), (F), and (G) consist of disclosures of statements made by individual and corporate defendants and a defendant's criminal history.

Warren's requests for things like "witness' responses on a polygraph examination;" "communications between informants and/or cooperating individuals [and] any such agent or attorney;" "rough notes, memoranda and/or reports of interviews by any government agent" all seem to fall squarely within the scope of internal reports and other internal government documents exempted from disclosure under Rule 16(a)(2). As such, Rule 16 does not authorize the disclosures Warren seeks.

For all of the foregoing reasons, Warren's motion for early disclosure of Jencks Act Material will be denied.

### III. MOTION TO SUPPRESS IDENTIFICATION (DOC. 224)

At the time of the Pretrial Motion Status Hearing on May 24, 2018, the United States contested the need for an evidentiary hearing on Warren's motion to suppress identification. Specifically, the United States argued that the facts and circumstances of the case did not implicate the due process concerns that typically arise from an out-of-court identification. However, after considering the arguments of counsel and the parties' written submissions, the undersigned scheduled an evidentiary hearing on Warren's motion to suppress identification.

On June 29, 2018, the parties appeared for an evidentiary hearing on Warren's motion to suppress identification. At the hearing, the United States presented testimony of two witnesses: Special Agent Vincent Liberto with the Federal Bureau of Alcohol, Tobacco, Firearms and Explosives and St. Louis Metropolitan Police Department Detective Garrett Burgess. Warren offered no testimony but introduced portions of a pole camera surveillance video and video of the

4

interior of the undercover vehicle during cross examination of the government's witnesses. *See* Deft. Exhs. 2 and 3.[1]

At the close of the evidentiary hearing defense counsel requested, and was granted, time to order a copy of the transcript and to file post-hearing briefs. Post-hearing briefing was completed on August 15, 2018, and the defendant's remaining pretrial motions are now ready for a ruling. Based on the written submissions of the parties, the arguments of counsel, the evidence presented, and my review of the applicable law, I make the following findings of fact and conclusions of law.

### A. FACTUAL FINDINGS

At some unspecified point in time prior to December 2017, ATF Agents, including Special Agent Liberto, began investigating the "Bacon Mob." The investigation began after a confidential informant came forward with information that several people were selling narcotics and drugs within the neighborhood around the Grand-U-Buy market. The investigation led to multiple arrests with multiple people, including Warren, being charged with federal felony offenses.

During the investigation, Agent Liberto received information that an individual known only as "Tony" and his girlfriend, known only as "Skeet," were selling crack and heroin at a house on the corner of Bacon and Montgomery. The confidential informant described "Skeet" as a petite African American woman with red hair. Agent Liberto eventually obtained a telephone number for "Tony" from the confidential informant. Using the telephone number, Agent Liberto was able to identify "Tony" as Tony Gleghorn, a felon who, at the time, was on supervised release in the Eastern District of Missouri. Agent Liberto was also able to determine that Gleghorn had registered his address as 1763 Prima Vera and that the utilities at the Prima Vera address were in the name

---

[1] Defense counsel also attempted to introduce an ATF report into evidence; however, the Assistant United States objected to the admission of the report and defense counsel withdrew the exhibit without a ruling from the Court. See Evid. Hrng. Tr. (Doc. 259), at p. 63-64.

5

of a Kihaundra Warren. Agent Liberto obtained a recent mugshot of Gleghorn and showed it to the confidential informant, who confirmed that Gleghorn was the individual selling narcotics on Bacon. Agent Liberto also obtained a mugshot of Warren. Based on the confidential informant's description of "Skeet" and the connection he found between Warren and Gleghorn's address at 1763 Prima Vera, Agent Liberto believed that "Skeet" and Warren were one in the same.

Once he knew the identity of Gleghorn, Agent Liberto then enlisted the help of Detective Burgess and a different confidential informant to conduct a controlled buy of crack cocaine on December 5, 2017.[2] Specifically, Detective Burgess was equipped with recording devices inside his undercover vehicle and provided information about Gleghorn. Following the instructions of Agent Liberto, Detective Burgess picked up the informant and spoke with her about the transaction. The informant told Detective Burgess she could get three rocks from Gleghorn for $25 instead of two rocks for $20. Detective Burgess gave her the money that had been furnished to him by investigators. Detective Burgess and the informant then proceeded to 2529 Bacon where he saw Gleghorn standing in front of a vehicle with the hood partially up. Detective Burgess drove slowly past Gleghorn's car and saw a back female with bright red hair in the driver's seat. At the evidentiary hearing, Detective Burgess positively identified Warren as the individual he saw in the car.

---

[2] There was conflicting testimony during the evidentiary hearing about whether the informant did or did not know he/she was participating in a controlled purchase with law enforcement. Agent Liberto testified that he set up the controlled purchase with an "unwitting" informant and defined an "unwitting" confidential informant as one who is not aware he/she is helping police with a controlled purchase. Detective Burgess contradicted Agent Liberto's testimony by stating that the confidential informant knew he/she was involved in a controlled purchase and that they talked about what they were going to do before interacting with Gleghorn and Warren. However, Detective Burgess later contradicted himself by stating he really did not know whether the informant knew they were conducting a controlled purchase. Instead, according to Detective Burgess, the informant did not ask if he was police and he did not say. The undersigned has not attempted to resolve this conflict in the record because its resolution is not necessary to resolving the relatively narrow legal issue raised by Warren's motion to suppress.

Detective Burgess parked the undercover vehicle approximately two to three car lengths in front of Gleghorn's vehicle and told the informant to go and make the purchase. From his undercover vehicle, Detective Burgess was able to observe the informant approach Gleghorn and have a brief conversation. Thereafter, Detective Burgess saw Gleghorn walk to the passenger door of the vehicle, which was open, and lean into the vehicle. From Detective Burgess' vantage point, it appeared that the informant and the driver (Warren) engaged in some sort of hand-to-transaction. After that, the informant walked back to the front of the car and spoke with Gleghorn for several seconds before yelling something to the person inside Gleghorn's car and returning to the undercover vehicle. After the informant returned to the undercover car, Detective Burgess left the area with the informant. After dropping off the informant, Detective Burgess returned to the agents and turned over the narcotics to Agent Liberto.

Agent Liberto and other investigators also observed the December 5th controlled purchase, albeit remotely. Using a pole camera, Agent Liberto was able to observe the white undercover vehicle pull up and park about two or three car lengths in front of Gleghorn's maroon vehicle; observe Gleghorn standing outside of the vehicle near the passenger side; observe the informant approach Gleghorn's vehicle and interact with someone who was sitting in the driver's seat; and return to the undercover vehicle after a brief interaction. *See* Deft. Exh. 2. The investigators, including Agent Liberto, also had the benefit of the dashcam video recording from Detective Burgess' undercover vehicle, which allowed for an even closer look at the individual sitting inside Gleghorn's car at the time of the controlled purchase. *See* Deft. Exh. 3.

After Detective Burgess and the informant completed the controlled purchase on December 5th, Agent Liberto and other investigators conducted physical surveillance of Gleghorn and Warren

by following them back to the Prima Vera address. Agent Liberto observed Warren get out of the car and enter the Prima Vera address.

The next day, on December 6th Detective Burgess and the informant set up for a second controlled purchase. When Detective Burgess and the informant drove by 2529 Bacon, they observed Warren standing on the street in front of the house. Upon observing Warren, the informant said "there's Skeet, that's the one we need to contact." However, due to heavy police presence in the area on December 6th the second controlled purchase did not occur.

Following the failed attempt at a second controlled purchase on December 6th, Agent Liberto showed Detective Burgess Warren's photograph and asked him to identify the photo if he could. Detective Burgess identified the person in the photo as the lady the informant had referred to as "Skeet" on December 6th. Detective Burgess also identified the person in the photo as the person who had been sitting in the driver's seat at the time of the controlled purchase on December 5th.

### B. CONCLUSIONS OF LAW

It appears that the sole issue raised in Warren's suppression motion is whether Detective Burgess' identification of Warren was the result of such unnecessarily suggestive procedures that allowing Burgess' identification testimony at trial would violate Warren's due process rights.[3] *See* Deft.'s Post-hearing Br. Doc. 280, at p. 2-3.

"In our system of justice, fair trial for persons charged with criminal offenses is secured by the Sixth Amendment, which guarantees to defendants the right to counsel, compulsory

---

[3] Defendant's post-hearing brief identifies two other categories of identifications (e.g., Agent Liberto's identification of Warren and the informant's identification of Warren) and alludes to them as issues that may be the subject of a future motion in limine. However, defendant did not raise any of those issues in her pretrial motions. As such, those issues are not properly before the undersigned and will not be addressed as part of this Report and Recommendation.

8

process to obtain defense witnesses, and the opportunity to cross examine witnesses for the prosecution." *Perry v. New Hampshire,* 565 U.S. 228, 231 (2012). Otherwise, state and federal statutes and rules "ordinarily govern the admissibility of evidence," and juries are tasked with determining the reliability of evidence presented at trial. *Id.* at 237. It is only when evidence "is so extremely unfair that its admission violates fundamental conceptions of justice" has the Supreme Court "imposed a constraint tied to the Due Process Clause." *Id.* Specifically, the Supreme Court has recognized "a due process check on the admission of eyewitness identification" that is triggered when the police "have arranged suggestive circumstances leading the witness to identify a particular person as the perpetrator of a crime." *Id* at 232.

Courts use a two-step analysis in determining whether the Due Process Clause of the Fifth Amendment requires suppression of an eyewitness identification allegedly tainted by police arrangement. *Perry,* 565 U.S. at 238-39; *Neil v. Biggers*, 409 U.S. 188, 198-99 (1972). Because due process concerns "arise only when law enforcement officers use an identification procedure that is both suggestive and unnecessary," in the first step of the analysis a defendant must prove the identification procedure used by police was "suggestive and unnecessary." *Perry,* 565 U.S. at 238-39. "When no improper law enforcement activity is involved," reliability is better tested with tools such as "vigorous cross-examination, protective rules of evidence, and jury instructions on both the fallibility of eyewitness identification and the requirement that guilt be proved beyond a reasonable doubt." *Id.* at 233.

If, however, the identification procedure used by law enforcement was impermissibly suggestive, the court must consider whether the identification was nevertheless reliable despite improper police conduct. *See id.* at 239; *Biggers*, 409 U.S. at 201. Because "[i]t is the likelihood of misidentification which violates a defendant's right to due process," the focus of the due

9

process inquiry is on the reliability of the identification testimony, rather than the suggestiveness of the identification procedure. *Biggers*, 409 U.S. at 198. An identification derived from unnecessarily suggestive procedures will not be excluded if the totality of the circumstances indicates that the identification is reliable. *Manson v. Brathwaite*, 432 U.S. 98, 107, 114-16 (1977).

In determining reliability, courts use the five *Biggers* factors: (1) the witness's opportunity to view the culprit at the time of the crime; (2) the witness's degree of attention at the time of the crime; (3) the accuracy of the witness's description of the culprit prior to the identification; (4) the witness's level of certainty when identifying the defendant at the confrontations; and (5) the length of time between the crime and confrontation. *Biggers,* 409 U.S. at 199-200; *Manson,* 432 U.S. at 115-16; *United States v. Hadley,* 671 F.2d 1112, 1115-16 (8th Cir. 1982). Courts also consider the strength of other evidence against the defendant when making a reliability determination.  *See United States v. Rogers,* 73 F.3d 774, 778 (8th Cir. 1996) (identification reliable where at least two other witnesses identified defendant).

### *1. The Identification Procedure Was Impermissibly Suggestive.*

In moving to suppress Detective Burgess' identification Warren contends, first, that this Court should disregard the fact that Detective Burgess was a part of the investigative team and treat his identification the same as any other eyewitness. Warren cites several cases from other jurisdictions in support of this argument. *See* Deft. Post-hearing Br. (Doc. 280), p. 5-6 (collecting cases). The United States has failed to provide any legal authority that contradicts Warren's argument, and the undersigned has found no legal basis for treating Detective Burgess' identification of Warren any differently from that of any other eyewitness. As such, the

10

undersigned will apply the foregoing principles in determining whether Detective Burgess' identification of Warren violated due process.

As Warren's Post-Hearing Brief correctly points out, Detective Burgess identified Warren after being shown a single mugshot photograph by Agent Liberto. At the time, Detective Burgess had been briefed on the investigation by Agent Liberto. There is no evidence that Detective Burgess gave a description of Warren to Agent Liberto or any other agent before being shown the single photograph. The foregoing facts bring this case within the line of cases in which the Eighth Circuit has consistently held it "impermissibly suggestive" for police to show an eyewitness a single photograph to identify a defendant. *United States v. Omar*, 786 F.3d 1104 (8th Cir 2015); *United States v. Patterson,* 20 F3d 801, 806 (8th Cir. 1994); *United States v. Murdock.* 928 F.3d 293, 297 (8th Cir. 1991). Therefore, Warren has met the first part of the two-part analysis. The remaining question is whether, under the totality of the circumstances, the single-photograph procedure used by Agent Liberto created a very substantial likelihood of irreparable misidentification. *Patterson,* 20 F.3d at 806.

### 2. *Based on the Totality of The Circumstances Burgess' Identification of Warren Was Reliable.*

Even though the single photograph identification procedure used with Detective Burgess was impermissibly suggestive, Warren's motion to suppress should be denied because nearly all five of the *Biggers* reliability factors weigh in favor of the United States. The evidence of record shows that the first *Biggers* factor favors the United States because, although Detective Burgess did not describe Warren prior to the identification, he had the opportunity to view Warren both at the time of the controlled purchase and the day following the purchase. The second factor also favors the United States because Detective Burgess was engaging in a controlled purchase as an undercover officer and testified credibly as to his level of attention to all that transpired during

11

the course of the controlled purchase. The fourth factor favors the United States because Detective Burgess was certain as to Warren's identity given his ability to observe Warren on the day of the controlled buy and given his observations and the corroborating statements made by the informant the day following the controlled purchase. Finally, the fifth factor favors the United States because Detective Burgess' identification took place within a day or two of the controlled purchase. Although a few days may have elapsed between the time of the controlled buy and Detective Burgess' eyewitness identification, courts have held identifications reliable where a significantly greater period of time elapsed between the incident and identification. *See, e.g., United States v. Henderson*, 320 F.3d 92, 100, 101 (1st Cir. 2003) (two and one-half years); *United States v. Flores-Rivera,* 56 F.3d 319, 331 (1st Cir. 1995) (seven years); *United States v. Peterson,* 411 Fed.Appx. 857, 865 (6th Cir. 2011) (one year and eight months); *United States v. Clark,* 319 Fed.Appx. 395, 402-03 (6th Cir. 2009) (five years).

In addition to the *Biggers* factors, the reliability of Detective Burgess' identification is bolstered by the presence of other corroborating evidence of record. Specifically, Burgess' account is corroborated by video recordings of the controlled purchase and by Agent Liberto's own identification of Warren. *See Rogers,* 73 F.3d at 778 (identification reliable where at least two other witnesses identified defendant). The fact that there are multiple witness identifications and video surveillance in this case cannot be ignored in assessing whether the identification by Detective Burgess was reliable under the totality of the circumstances. When the entire record is considered, the evidence as a whole tends to support, rather than cast doubt on, the reliability of the out-of-court identifications made by Detective Burgess in this case.

## **CONCLUSION**

For all of the foregoing reasons, Warren's Motion to Suppress Detective Burgess' Identification and Motion for Early Disclosure of Jencks Act Material should be denied. And, Warren's Motion to Suppress Surveillance and Motion to Suppress Physical Evidence should be denied as moot.

                                                        _____
                                                        SHIRLEY PADMORE MENSAH
                                                        UNITED STATES MAGISTRATE JUDGE

Dated this 30th day of August, 2018.